WOLFBLOCK LLP
A Pennsylvania Limited Liability Partnership
By:      Ralph P. Ferrara, Esquire
         Christopher L.  Soriano, Esquire
1940 Route 70 East, Suite 200
Cherry Hill, NJ  08003
(856) 874-4200
Attorneys for Plaintiffs, New Vista Nursing and Rehabilitation Center, Rivka Chaya Kleiman,
and Rivka Basya Kleiman

| | |
|---|---|
| 300 BROADWAY HEALTHCARE CENTER, d/b/a NEW VISTA NURSING AND REHABILITATION CENTER, RIVKA CHAYA KLEIMAN, and RIVKA BASYA KLEIMAN (Individually and Derivatively)<br><br>     Plaintiffs,<br><br>  v.<br><br>MARTIN FRIEDMAN ASSOCIATES, P.C., MARTIN FRIEDMAN, HAROLD GOLDENBERG, LEO HIRSCH, GEORGE WEINBERGER, LEON GOLDENBERG, and HADASSAH SCHWARTZ,<br><br>     Defendants. | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY<br><br>DOCKET NO:<br><br>CIVIL ACTION COMPLAINT |

   Plaintiffs New Vista Nursing and Rehabilitation Center ("New Vista"), Rivka Chaya

Kleiman ("RC Kleiman") and Rivka Basya Kleiman ("RB Kleiman"), by their undersigned

attorneys, by way of Complaint against defendants, allege as follows:

## **INTRODUCTION**

   1.  Plaintiffs bring this action arising from defendants' malpractice and breach of

fiduciary duties in rendering accounting services for the New Vista nursing home while, at the

same time, maintaining a clandestine ownership interest in the nursing home.

2.      As a result of their inherent conflict of interest, defendants neglected to perform their duties as accountants competently and professionally, and conspired to obtain a greater equity interest in the nursing home for themselves at the expense of plaintiffs.

3.      As a result of their blatant breach of fiduciary duties and malpractice, plaintiffs have sustained damages and continue to sustain damages, all of which, plus punitive damages, should be awarded against defendants.

## PARTIES

4.      Plaintiff 300 Broadway Healthcare Center, LLC, d/b/a New Vista Nursing and Rehabilitation Center ("New Vista") is a New Jersey limited liability company with its principal place of business located at 300 Broadway, Newark, New Jersey.

5.      Plaintiff Rivka Chaya Kleiman ("RC Kleiman") is an individual residing at 1153 Buckwald Court, Lakewood, New Jersey 08701.  RC Kleiman is a member of New Vista and brings these claims individually and derivatively on behalf of New Vista.

6.      Plaintiff Rivka Basya Kleiman ("RB Kleiman") is an individual residing at 12 Cedar Row, Lakewood, New Jersey.  RB Kleiman is a member of New Vista and brings these claims individually and derivatively on behalf of New Vista.  RB Kleiman and RC Kleiman are collectively referred to as the "Kleimans."

7.      Defendant Martin Friedman Associates, P.C. is, upon information and belief, a New York partnership engaged in the practice of accounting.  The principal place of business of Martin Friedman Associates, P.C. is 2700 Nostrand Avenue, Brooklyn, New York.

8.      Defendant Martin Friedman is, upon information and belief, a named partner of Martin Friedman Associates, P.C., and is a citizen of New York, residing in Brooklyn, New York.

2

9.      Defendant Harold Goldenberg is a partner or associate in Martin Friedman Associates, P.C., and, upon information and belief, is a citizen of New York, residing in Brooklyn, New York.

10.     Defendant Leo Hirsch is a partner or associate in Martin Friedman Associates, P.C., and, upon information and belief, is a citizen of New York, residing in Brooklyn, New York.

11.     Defendant George Weinberger is an individual and member of New Vista, and is a citizen of New York, residing in Brooklyn, New York.

12.     Defendant Leon Goldenberg is an individual and member of New Vista, and is a citizen of New York, residing in Brooklyn, New York.

13.     Defendant Hadassah Schwartz is an individual and member of New Vista, and is a citizen of New York, residing in Brooklyn, New York.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as the matter in controversy is between citizens of different states and exceeds the sum of $75,000, exclusive of interest and costs.

15.     Venue is properly laid in the District of New Jersey because a substantial part of the events giving rise to the claims occurred in this district.  Upon information and belief, the accounting services rendered by defendants, from which the claims alleged herein arise, were performed in this judicial district.

16.     Each of the defendants transacts and transacted business in New Jersey, and each is subject to personal jurisdiction in New Jersey.

3

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

17.     In December 1998, New Vista was formed for the purpose of acquiring a 424-bed long-term healthcare facility (i.e., nursing home) at 300 Broadway, Newark, New Jersey. The acquisition of the nursing home was accomplished through the efforts of Brian Kleiman, the spouse of plaintiff RC Kleiman.

18.     The nursing home was not in good shape at the time and Mr. Kleiman believed that with proper investment and care, the nursing home could be turned around and made into a top-notch facility.

19.     Given the amount of investment that would be required to turn the facility around, the Kleimans determined that having additional investors in the facility would be appropriate.

20.     The Kleimans and their spouses located a proposed investor, defendant George Weinberger. However, before deciding whether to invest in New Vista, George Weinberger requested that defendants Leo Hirsch and Harold Goldenberg, two accountants who are affiliated with defendant Martin Friedman Associates, P.C., review the proposed acquisition.

21.     Following Hirsch's and H. Goldenberg's review, George Weinberger decided to invest in New Vista. However, as a condition to his investing in the nursing home, George Weinberger demanded (i) that defendant Martin Friedman Associates, P.C. serve as accountants for New Vista and (ii) that RB Kleiman and RC Kleiman (and their spouses who brought the deal together) consent to Leo Hirsch and Harold Goldenberg (the "Friedman Defendants") acquiring equity interests in New Vista.

22.     The Friedman Defendants' involvement in the nursing home as investors posed an irreconcilable conflict of interest for defendants in their serving as accountants for New Vista and the nursing home.

4

23.    Apparently knowing that this was an issue, the Friedman Defendants concealed their membership interests in New Vista by arranging for their investments in New Vista to be made through family members:  in Goldenberg's case through his brother, defendant Leon Goldenberg, and in Hirsch's case through his sister, defendant Hadassah Schwartz.

24.    However, the Friedman Defendants never disclosed to plaintiffs that their acting as New Vista's accountants while owning equity interests therein, through nominees or otherwise, posed an irreconcilable conflict of interest that would prevent them from performing their accounting duties competently and professionally.  In fact, Hirsch and Goldenberg stated that this was something they had done many times before.

25.    Subsequently, however, the Friedman Defendants conflict of interest manifested itself.

26.    Specifically, sometime in 2001, Goldenberg informed George Weinberger that the Kleimans' spouses had mismanaged the facility.  Goldenberg claimed that New Vista sustained a drastic negative economic effect as a result of an unused portion of the facility being converted to day care services.

27.    Goldenberg did not inform the Kleimans or their spouses of his charges, and they found this out when George Weinberger confronted them with the accusations.  In reality, however, George Weinberger, L. Goldberg and Schwartz (the "Weinberger Defendants") and the Friedman Defendants conspired to oust the Kleimans' spouses from management of the nursing home through such false charges.

28.    The charges against the Kleimans' spouses were false.  In fact, the use of a portion of the facility for day care services, and reimbursement, had been coordinated with New Vista's

5

healthcare consultants, HUBCO Healthcare.  The Friedman Defendants' statements and conclusions were proven to be flatly incorrect.

29.     This did not stop the Friedman Defendants and Weinberger Defendants from continuing to scheme to oust the Kleimans and their spouses from the management of the nursing home.

30.     In May 2002, feigning the lack of cooperation on the part of the Kleimans' spouses, the Friedman Defendants announced their resignation as New Vista's accountants.  The charges again were absolutely false and were fabricated to set up another attempt to oust the Kleimans' spouses from the management of the facility.

31.     Using the accountants' resignation and other false charges as cause for demanding the ouster of the Kleimans' spouses, the Weinberger Defendants attempted to assume total control of New Vista, as explained below.

32.     At numerous additional times, the Weinberger Defendants again falsely accused the Kleimans' spouses of mismanaging the nursing home.  They also claimed falsely that the Kleimans failed to contribute $500,000 in capital to New Vista, although that contribution had been made (as had been agreed upon) by virtue of Brian Kleiman's successful efforts in negotiating the facility's purchase price.

33.     Shortly thereafter, on January 25, 2005, the Weinberger Defendants met secretly, and resolved to terminate the Kleimans' spouses' management agreement and acquire control of the nursing home.  This effort failed as well.

34.     Failing to oust the Kleimans through their strong-arm and deceitful tactics, the Weinberger Defendants (the latter two through their relatives who acted as their nominees in their investment in New Vista) brought suit in the Superior Court of New Jersey, Chancery

Division, Essex County (Docket No. C-25-05), against RC Kleiman, RB Kleiman and their spouses and their entities, asserting false allegations of, inter alia, mismanagement.  The Kleimans have vigorously denied those charges and have asserted counterclaims therein.  The Friedman Defendants are not parties to that lawsuit.

35.     RC and RB Kleiman remain as owners of the business.  However, as a result of a temporary injunctive decision, the Weinberger Defendants have been installed as managers pending a final resolution of that case.

36.     Since the removal of their husbands as managers of the facility, RC and RB Kleiman have been denied access to the books and records of the facility.

37.     Defendants have prepared false, fraudulent, and erroneous statements, including Form K-1s, as late as 2007.

38.     The Form K-1s issued for 2007 show no change in the capital account and list no percentage of ownership for the Kleimans, notwithstanding the fact that the Kleimans own at least 40% of the business.

39.     Defendants are aware of the Kleimans' interest because previous Form K-1s reflected an ownership by the Kleimans and no supervening act has taken place to result in the Kleimans no longer being owners.

40.     During the Weinberger Defendants' management of the facility, funds have been misappropriated in that defendant George Weinberger retroactively paid legal fees for his personal partnership litigation,  notwithstanding his own statements that this is barred by the Operating Agreement.

PHL:5903746.4/KLE150-245621

41.     The Weinberger Defendants have concealed their malfeasance by failing to produce budgets and financial statements for the members and present the same for approval of the members, notwithstanding their obligations to do so under the Operating Agreement.

42.     The Weinberger Defendants have allowed embezzlement to continue by allowing excessive capital expenditures and failing to account and obtain approval for same to the membership of New Vista.

43.     In addition to the excessive capital expenditures, the Weinberger Defendants have paid and continues to pay salary to defendant George Weinberger's nephew without authority. The salary paid to defendant George Weinberger's nephew exceeds the allowable and reasonable amount permitted for reimbursement, and is therefore not permitted under the Operating Agreement without the consent of the members, which has not been obtained.

44.     The Weinberger Defendants have further embezzled funds by paying the son-in-law of defendant George Weinberger as a consultant and concealing this payment as a payment to a tax-deductible organization.

45.     The Weinberger Defendants have further embezzled funds at defendant George Weinberger's direction by allocating business funds to pay the personal accountant of defendant Weinberger, along with other personal expenses.

46.     The mismanagement of the enterprise by defendant George Weinberger in conjunction with the Friedman Defendants' has caused severe damage to the reputation of the facility.

47.     As personally witnessed by former Governor and current State Senator Richard Codey, the patient care at the facility deteriorated to abusive levels.  Over fifty deficiencies were found by the Department of Health and Senior Services, many of which may incur large fines.

PHL:5903746.4/KLE150-245621

The report is attached hereto as Exhibit A.  The facility was further damaged when the Newark

Star Ledger ran two extremely negative articles regarding the care at the facility under defendant

Weinberger.  The articles are attached hereto as Exhibit B.

## FIRST CLAIM FOR RELIEF
(All Plaintiffs v. Weinberger Defendants - Injury to Property Rights And Self-Dealing)

48.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-47

above as if fully set forth herein.

49.     With respect to RC Kleiman's and RB Kleiman's combined equity interests in

New Vista, the Friedman Defendants intentionally and fraudulently recorded on New Vista's

books amounts less than the percentage ownership interest to which the Kleimans were actually

entitled and owned.

50.     The Friedman Defendants recorded RC Kleiman's and RB Kleiman's combined

equity interest as 40% instead of the 45.45% equity interest they actually owned.

51.     The conduct of the Friedman Defendants was part of a planned and concerted

effort by them and the Weinberger Defendants to exercise control over New Vista by falsely

reducing the Kleimans' equity interest in New Vista.

52.     The conduct of the Friedman Defendants constituted blatant "self-dealing," in that

by falsely decreasing the Kleimans' equity interest, the Friedman Defendants increased the equity

interests of the Weinberger Defendants.

53.     The improper acts of self-dealing on the part of the Friedman Defendants would

not have occurred had the Friedman Defendants not been placed in their conflicting roles of

accountants and owners by the Weinberger Defendants.

54.     Upon information and belief, defendants Martin Friedman and Martin Friedman,

PC knew of Goldenberg's and Hirsch's self-dealing.  They aided and abetted the self dealing of

Goldenberg and Hirsch by permitting and approving their acquisition of a clandestine ownership interest in New Vista and permitting the conflict of interest to exist.

55.     As a proximate cause of the Friedman Defendants' misconduct, the Kleimans have been compelled to expend substantial sums to protect their equity interests and their entitlements as 45.45% owners of New Vista.

56.     As a direct and proximate result of the Friedman Defendants' misconduct, the Kleimans have sustained damages and continue to sustain damages in an amount in excess of $100,000, the precise amount to be determined at trial.

57.     In addition, the conduct of the Friedman Defendants is shocking to the conscious, outrageous and in total disregard of the Kleimans' rights.  Therefore, each of the defendants should be liable to pay punitive damages in the sum of $1 million.

**SECOND CLAIM FOR RELIEF**
(All Plaintiffs v. the Friedman Defendants - Fraud)

58.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-57 above as if fully set forth herein.

59.     The Friedman Defendants have an obligation to set forth accurate statements, including K-1s.

60.     The Friedman Defendants' form K-1s, and other tax and financial documents, have been false.

61.     The Friedman Defendants colluded with the Weinberger Defendants to file for reimbursement, from Medicaid, for non-allowable expenses such as legal, consulting, and arbitration fees, thereby making false statements to Medicaid.

62.     These false statements have been material.

10

63.     Plaintiffs are entitled to, and have reasonably relied upon, the accounting statements and tax forms rendered by the Friedman Defendants.

64.     As a result of these false statements, plaintiffs have been damaged in an amount in excess of $100,000, with the precise amount to be determined at trial.

65.     In addition, the conduct of the Friedman Defendants is shocking to the conscious, outrageous and in total disregard of the Kleimans' rights.  Therefore, each of the defendants should be liable to pay punitive damages in the sum of $1 million.

**THIRD CLAIM FOR RELIEF**
(All Plaintiffs v. the Friedman Defendants - Malpractice)

66.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-65 above as if fully set forth herein.

67.     New Vista retained the Friedman Defendants to act as New Vista's accountants in connection with its operation of the nursing home.

68.     New Vista intended to, and did in fact rely, on the accounting services and advice rendered by the Friedman Defendants.

69.     As New Vista's accountants, the Friedman Defendants had the duty to perform such tests, to conduct such reviews, and to implement and monitor such controls as are necessary for the operation of a skilled nursing facility such as New Vista.

70.     The Friedman Defendants owed New Vista the special professional duty of reasonable care and skill to properly perform such tests, conduct such reviews, implement and monitor such controls, and render such accounting services as reasonably required for the operation of a skilled nursing facility such as New Vista.

PHL:5903746.4/KLE150-245621

71.     The Friedman Defendants were negligent, breached their professional duty of reasonable care and skill, and failed to properly and competently perform their duties as New Vista's accountants.

72.     For example, The Friedman Defendants were negligent in failing to uncover the embezzlement of over $1 million, perpetrated over a number of years, by Peter Joseph Leus, an employee of New Vista.

73.     Had the Friedman Defendants performed their duties properly, competently and with the requisite degree of care and skill, Leus would not have been able to perpetrate his embezzlement for so many years, or the embezzlement would have been discovered long ago, before substantial damages were incurred.

74.     The neglect and malpractice of the Friedman Defendants is attributable to the fact that, as equity owners in New Vista, defendants had no concern that they would ever be called to task for their professional misconduct.  The Friedman Defendants, by their ownership interests in New Vista, believed they could perpetuate their role as the facility's accountants for as long as they wished.

75.     As a direct and proximate result of the Friedman Defendants' misconduct, as aforesaid, New Vista has sustained damages in an amount in excess of $1 million, the precise amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
(All Plaintiffs v. the Friedman Defendants - False Billing Practices)

76.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-75 above as if fully set forth herein.

77.     For calendar year 1999, the Friedman Defendants charged New Vista in excess of $95,000 for services rendered during that year.

PHL:5903746.4/KLE150-245621

78.    The actual services rendered warranted a fee of no more than $57,000.

79.    The Friedman Defendants intentionally overcharged New Vista for accounting services by more than $38,000.

80.    As a direct and proximate result of defendants' conduct, as aforesaid, the Friedman Defendants are liable to New Vista in the amount of at least $38,000, plus interest and other damages associated therewith from January 1, 2000.

### FIFTH CLAIM FOR RELIEF
(All Plaintiffs v. the Friedman Defendants - Breach of Contract)

81.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-80 above as if fully set forth herein.

82.    Pursuant to the retention agreement between the Friedman Defendants and New Vista for the rendering of accounting services, the Friedman Defendants agreed to express an opinion on New Vista's financial statements, in accordance with generally accepted accounting principles.

83.    The Friedman Defendants also were obligated to prepare trial balance sheets used for reimbursement from Medicare and Medicaid.

84.    Because of the conflict of interest of the Friedman Defendants by virtue of their ownership interest in New Vista, the Friedman Defendants could not express and issue any opinion on New Vista's financial statements or trial balances.

85.    Such opinions are customary and necessary in order for businesses such as New Vista to obtain financing if necessary, for insurance purposes and in dealings with other third parties.

86.    The Friedman Defendants thus breached the contract between them and New Vista.

87.     New Vista performed all parts of the contract that on its part it was required to perform.

88.     As a direct and foreseeable result of the Friedman Defendants' breach of contract, New Vista has sustained damages in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
(All Plaintiffs v. All Defendants - Conspiracy)

89.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-88 above as if fully set forth herein.

90.     At all times relevant hereto, all defendants, with a common purpose designed to damage plaintiffs, have engaged in a pattern of behavior to mislead and defraud plaintiffs.

91.     During the course of the conspiracy, all defendants, acting in concert, engaged in numerous coordinated acts to further the purposes of the conspiracy, including but not limited to the acts described in the paragraphs of this Complaint, which are specifically incorporated herein.

92.     Each act of the conspiracy was ratified by the other co-conspirators, who acted as each other's agents in carrying out the conspiracy.  Thus, each defendant is jointly and severally liable for the torts of the other members of the conspiracy which were committed in furtherance of the goals of the conspiracy.

93.     As a direct and proximate result of defendants' conduct, plaintiffs have been damaged in an amount in excess of $100,000, with the precise amount to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**
(All Plaintiffs v. All Defendants - RICO)

94.     Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-93 above as if fully set forth herein.

14

95.     This claim for relief arises under the New Jersey RICO statute, N.J.S.A. 2C-41:1 et seq.  Plaintiffs seek to recover treble the damages they sustained as a result of the defendants' wrongful conduct, the costs of this suit, interest and reasonable attorneys' fees.

96.     Each of the defendants is a person as defined by N.J.S.A. 2C:41-1(2)(b).

97.     In or around 2002 and continuing, in violation of N.J.S.A. 2C:41-1(2)(c) and (d), an enterprise and/or association and/or conspiracy in fact was formed by and among the defendants, headed by defendant George Weinberger, to engage in activities which would and did affect interstate and intrastate commerce.  The Weinberger Defendants and Friedman Defendants used the enterprise to misstate the ownership of plaintiffs and to defraud plaintiffs. This activity was conducted pursuant to a pattern of racketeering activity to the detriment of plaintiffs.

98.     The purpose of this enterprise was, inter alia, to defraud the plaintiffs.  The defendants had operation and/or management power of the enterprise.

99.     The acts of racketeering were that Weinberger Defendants and Friedman Defendants utilized the enterprise to defraud plaintiffs and to misstate plaintiff's ownership in an effort to remove plaintiffs as owners.

100.    The racketeering activities aforesaid which constitute predicate acts in a pattern of racketeering activity are criminal violations of N.J.S.A. 2C:21-4 (fraudulent records and financial statements); 2C:21-9 (fraudulent practices and misconduct by corporate officials); 2C:2-6 (complicity); 2C:41-2(c) and (d) (engaging in a pattern of racketeering and conspiracy to engage in a pattern of racketeering); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1961 (c) and (d) (racketeer influenced and corrupt organizations).

PHL:5903746.4/KLE150-245621

101.   The enterprise further embezzled funds, under the direction of defendant George Weinberger, by retroactively paying legal fees for his personal partnership litigation, notwithstanding his own statements that this is barred by the Operating Agreement.

102.   The enterprise, under the direction of the Weinberger Defendants, has concealed its malfeasance by failing to produce budgets and financial statements for the members and present the same for approval of the members, notwithstanding their obligations to do so under the Operating Agreement.

103.   The enterprise, under the direction of the Weinberger Defendants, has allowed embezzlement to continue by allowing excessive capital expenditures and failing to account and obtain approval for same to the membership of New Vista.

104.   In addition to the excessive capital expenditures, the enterprise has paid and continues to pay salary to defendant George Weinberger's nephew without authority.  The salary paid to defendant George Weinberger's nephew exceeds the allowable and reasonable amount permitted for reimbursement, and is therefore not permitted under the Operating Agreement without the consent of the members, which has not been obtained.

105.   The enterprise, under defendant George Weinberger's direction has further embezzled funds by paying the son-in-law of defendant George Weinberger as a consultant and concealing this payment as a payment to a tax-deductible organization.

106.   The enterprise has futher embezzled funds at defendant George Weinberger's direction by allocating business funds to pay the personal accountant of defendant George Weinberger, along with other personal expenses.

PHL:5903746.4/KLE150-245621

107.    The mismanagement of the enterprise by defendant George Weinberger in conjunction with the Friedman Defendants' has caused severe damage to the reputation of the facility, as set forth above.

108.    The enterprise as described above had and has the intent to continue its pattern of racketeering activity causing loss, cost and damage to plaintiffs and is a proximate cause of injury to them.  The criminal acts were related and pose a threat of continuing criminal activity.

109.    The Weinberger Defendants and Friedman Defendants knowingly conducted and conspired with each other to conduct and participate in the affairs of, and/or acquire an interest in and/or control of the enterprise described herein through a pattern of racketeering activity in violation of N.J.S.A. 2C:41.  There have been at least two predicate acts within the last ten years.

### EIGHTH CLAIM FOR RELIEF
(All Plaintiffs v. All Defendants - Conspiracy to Violate New Jersey RICO)

110.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-109 above as if fully set forth herein.

111.    All defendants participated and agreed to participate in the foresaid illegal enterprise to defraud plaintiffs and drive them out of a business they are lawful owners of.  This constitutes an illegal conspiracy to violate the New Jersey RICO statute in violation of N.J.S.A. 2C:41-2(d).

112.    All defendants agreed, participated and conspired with each other to commit the following predicate acts:  violations of N.J.S.A. 2C:21-4 (fraudulent records and inancial statements); 2C:21-9 (fradulent practices and misconduct by corporate officials); 2C:2-6 (complicity); 2C:41-2(c) and (d) (engaging in a pattern of racketeering and conspiracy to engage in a pattern of racketeering); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1961 (c) and (d) (racketeer influenced and corrupt organizations).

17

113.    The enterprise as described above had and has the intent to continue its pattern of racketeering activity causing loss, cost and damage to plaintiffs and is a proximate cause of injury to them.  The criminal acts were related and pose a threat of continued criminal activity.

114.    All defendants knowingly conspired with each other to conduct and participate in the affairs of, and/or acquire an interest in and/or control of the enterprise described herein through a pattern of racketeering activity in violation of N.J.S.A. 2C:41.  There have been at least two predicate acts of racketeering within the last ten years.

115.    As a result of the foregoing, plaintiffs have been and continue to be substantially damaged and irreparably harmed.

## NINTH CLAIM FOR RELIEF
### (All Plaintiffs v. the Friedman Defendants - Consumer Fraud)

116.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-115 above as if fully set forth herein.

117.    Plaintiffs bring this claim for relief under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, in that they are consumers who purchased services provided by the defendants in connection with a business in the State of New Jersey.

118.    The accounting services at issue here constitute "merchandise" as that term is defined in N.J.S.A. 56:8-1(c).

119.    The accounting services at issue here constitute a "sale" as that term is defined in N.J.S.A. 56:8-1(e).

120.    For purposes of this action, plaintiffs constitute "persons" as that term is defined in N.J.S.A. 56:8-1(d).

121.    Unfair methods of competition and unfair or deceptive acts or practices are defined and declared unlawful under N.J.S.A. 56:8-1, *et seq.*  Specifically, N.J.S.A. 56:8-2

defines the specific conduct which is declared illegal under the CFA.  That section provides, in relevant part, as follows:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…, is declared to be an unlawful practice.

122.    Defendants omitted, suppressed or concealed material facts concerning the conflict of interest between them, the Weinberger Defendants, and the facility.

123.    The Friedman Defendants falsely and deceptively misrepresented or knowingly omitted, suppressed or concealed material facts regarding the facility in an effort to run the Kleimans out of the facility.

124.    The Friedman Defendants falsely and deceptively misrepresented or knowingly omitted, suppressed or concealed material facts when they conspired with the Weinberger Defendants to deprive the Kleimans of their property rights.

125.    The Friedman Defendants knew or should have known that their acts and omissions were illegal and violative of the plaintiffs' rights under New Jersey law.

126.    The Friedman Defendants' actions as set forth herein constitute a knowing, omission, suppression or concealment of material facts, made with the intent that others will rely upon such concealment, suppression or omission.

127.    The Friedman Defendants' actions as described above further evidenced lack of good faith, honesty in fact in observance of fair dealing so as to constitute an unconscionable commercial practice as such term is defined under N.J.S.A. 56:8-2.

128.    Such unconscionable commercial practices have rendered the defendants liable to plaintiffs N.J.S.A. 56:8-2, which provides that:

> Any person violating the provisions of the within act shall be liable for a refund of all monies acquired by means of any practice declared herein to be unlawful.

129.    As a proximate result of these violations of the CFA, plaintiffs have suffered ascertainable loss for which the Friedman Defendants are liable to the Plaintiffs for treble damages.  N.J.S.A. 56:8-13, 19.

130.    N.J.S.A. 56:8-19 provides plaintiffs with standing to commence this action, recover treble damages, attorney's fees and costs.

131.    As a direct and proximate result of the Friedman Defendants' fraudulent conduct, the Friedman Defendants have violated the CFA and, as such, Plaintiffs are entitled to damages, treble damages, an Order declaring such violative conduct illegal, and an award of attorneys fees and costs of suit.

WHEREFORE, plaintiffs request judgment as follows:

A.    On the First Claim for Relief, awarding the Kleimans compensatory damages as against the Friedman Defendants, jointly and severally, in an amount in excess of $100,000, the precise amount to be determined at trial, plus punitive damages against each defendant in the amount of $1 million;

B.    On the Second Claim for Relief, awarding the Kleimans compensatory damages as against the Friedman Defendants, jointly and severally, in an amount in excess of $100,000, the precise amount to be determined at trial, plus punitive damages against each defendant in the amount of $1 million;

20

C.    On the Third Claim for Relief; awarding New Vista compensatory damages as against the Friedman Defendants, jointly and severally, in an amount in excess of $1,000,000, the precise amount to be determined at trial;

D.    On the Fourth Claim for Relief, awarding New Vista compensatory damages as against the Friedman Defendants, jointly and severally, in an amount in excess of $38,000, the precise amount to be determined at trial, plus interest thereon from January 1, 2000;

E.    On the Fifth Claim for Relief, awarding New Vista compensatory damages as against all defendants, jointly and severally, in an amount to be determined at trial;

F.    On the Sixth Claim for Relief, awarding New Vista compensatory damages as against all defendants, jointly and severally, in an amount to be determined at trial.

G.    On the Seventh Claim for Relief, injunctive relief, compensatory damages, treble damages, consequential and punitive damages in an amount to be determined at trial, interest, costs of suit, and attorneys fees;

H.    On the Eighth Claim for Relief, injunctive relief, compensatory damages, treble damages, consequential and punitive damages in an amount to be determined at trial, including damages due to the loss of goodwill and reputation of the facility, interest, costs of suit, and attorneys fees;

I.    On the Ninth Claim for Relief, injunctive relief, compensatory damages, treble damages, consequential and punitive damages in an amount to be determined at trial, interest, costs of suit, and attorneys fees;

J.    Awarding plaintiffs their costs and disbursements of this action; and

K.    Granting plaintiffs such other and further relief as the Court deems just and proper.

PHL:5903746.4/KLE150-245621

Dated:  November 7, 2008                    WOLFBLOCK LLP


                                            /s/Ralph P. Ferrara
                                            Ralph P. Ferrara
                                            Christopher L. Soriano
                                            Attorneys for Plaintiffs



## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.


Dated:  November 7, 2008                    WOLFBLOCK LLP


                                            /s/Ralph P. Ferrara
                                            Ralph P. Ferrara, Esquire
                                            Christopher L. Soriano, Esquire
                                            Attorneys for Plaintiffs

22

PHL:5903746.4/KLE150-245621