NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| 300 BROADWAY, et al.,<br><br>                Plaintiffs,<br>v.<br><br>MARTIN FRIEDMAN ASSOCIATES, P.C., et al.,<br><br>                Defendants. | Civil Action No. 08-5514 (KSH)<br><br>**OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I.     INTRODUCTION**

Plaintiffs Rivka Chaya Kleiman and Rivka Basya Kleiman ("Kleiman wives") and 300 Broadway Healthcare Center (d/b/a New Vista Nursing and Rehabilitation Center) ("New Vista") allege that defendants George Weinberger, Leon Goldenberg, and Hadassah Schwartz ("Weinberger defendants" or "majority members") and defendants Martin Friedman Associates, P.C., Martin Friedman, Harold Goldenberg, and Leo Hirsch ("accounting defendants") (collectively, "defendants") conspired to deprive them of their ownership interest in New Vista, a long-term healthcare facility located in Newark, New Jersey.

This lawsuit is filed against the backdrop of a state court derivative lawsuit brought against the husbands of the Kleiman wives, brothers Brian and Steven Kleiman ("Kleiman husbands"), who are the former managers of New Vista. With the filing of the within federal civil Racketeering Influenced and Corrupt Organizations (RICO) action, the litigation has

escalated into the Kleiman wives' case against the majority members and New Vista's accounting firm in which the Kleiman wives allege that defendants conspired first to oust the Kleiman husbands from their management positions in New Vista, and then to fraudulently squeeze out the Kleiman wives' ownership interest in New Vista.

Before the Court is defendants' motion to dismiss.  The Court's federal question jurisdiction over the federal RICO claims is proper pursuant to 28 U.S.C. § 1331, and the Court's supplemental jurisdiction over the plaintiffs' numerous state law claims is proper pursuant to 28 U.S.C. § 1367.

## II.     FACTUAL BACKGROUND

### A.  *New Vista litigation in state court*

In 1998, the Kleiman husbands solicited George Weinberger, a prominent investor in the Orthodox Jewish community, to invest in a nursing home in Newark, New Jersey.  (Am. Compl. ¶ 21-22.)  Weinberger brought the proposal to defendant accounting firm, and individual accounting defendants, Leo Hirsch and Harold Goldenberg, reviewed it and found it acceptable.  Weinberger agreed to make the investment, with the understanding that Martin Friedman Associates, P.C. would be the accounting firm for New Vista, and that Leo Hirsch and Harold Goldenberg would have equity interests in New Vista.  (*Id.* at ¶ 22-23.)

Weinberger, Hirsch, and Goldenberg each made capital contributions to New Vista.  Weinberger's investment was made in his own name.  (*Id*. ¶ 23.)  Harold Goldenberg's investment was made under the name of his brother, defendant Leon Goldenberg, and Leo Hirsch's investment was made under the name of his sister, defendant Hadassah Schwartz.  (*Id.* at ¶ 25.)  Plaintiffs allege that Goldenberg and Hirsch never disclosed this arrangement, and that

it posed an "irreconcilable conflict of interest that would prevent them from performing their accounting duties competently and professionally." (*Id.* at ¶ 26.)

Under the terms of the investment agreement, the Kleiman husbands were named the managers of New Vista through their management company, Happy Days Adult Healthcare, LLC, and the Kleiman wives were members and partial owners. (Weinberger Br. 7.) In December 1998, New Vista was established for the purpose of operating a 424-bed long-term nursing facility at 300 Broadway in Newark. (Am. Compl. ¶ 19.)

In May 2002, the accounting defendants notified the Kleiman husbands that they were resigning from their position as New Vista's accountants.[1] (*Id.* at ¶ 33.) The Kleiman husbands continued to manage New Vista until 2005, when the majority members—who are among the defendants in this case—"resolved to terminate" the Kleiman husbands' management agreement. (*Id.* at ¶ 36.) The majority members commenced a derivative action lawsuit in state court on behalf of New Vista, referred to here as "New Vista litigation," in January 2005, *300 Broadway Healthcare Center, LLC v. Happy Days Adult Healthcare Center, LLC, et al.*, Chancery Division, Essex County. (*Id.* at ¶ 37.)

Shortly after the state court action was filed, on February 7, 2005, the majority members submitted an order to show cause for a preliminary injunction seeking enforcement of the resolution to remove the Kleiman husbands from their management positions. (Weinberger Br. 4.) On March 30, 2005, the court granted the majority members' application and ordered that the

---

[1] According to the accounting defendants, they were unable to perform their professional accounting duties because the Kleiman husbands repeatedly ignored requests to review New Vista's financial records. (Martin Friedman Br. 5.) Due to the Kleiman husbands' alleged lack of cooperation with these requests, the accounting defendants claim they were unable to prepare and file New Vista's 2001 tax returns. (*Id.*) The accounting defendants' proffered defense for resigning is irrelevant under a Rule 12(b)(6) analysis, where all pleaded facts are deemed true.

3

Kleiman husbands be removed from their management positions. (*Id.*) The Kleiman husbands thereafter made a motion for reconsideration on the grounds that the court had to find "cause" before they could be removed. (*Id.*) The court granted the motion for reconsideration.

In response, the majority members moved for partial summary judgment, declaring that "cause" existed for the Kleiman husbands' removal, that the management agreement should be terminated, and that the Kleiman husbands should be permanently enjoined to turn over management, books, records, and property of New Vista to the majority members. (*Id.*)

On November 4, 2005, the court granted the majority members' motion for partial summary judgment on the basis that they provided sufficient good cause of illegal or fraudulent acts on the part of the Kleiman husbands. (Mark S. Olinsky ("Olinsky") Cert., Exh. B.) The court entered the order on November 16, 2005, barring the Kleiman husbands from exercising any control over New Vista's property and assets. (*Id.*, Exh. C.)

Since then, the New Vista litigation has proceeded through discovery and trial is expected to begin in April 2010. (*Id.* at 6.) The majority members' third amended complaint in that case, filed on September 8, 2008, asserts 12 causes of action against the Kleiman husbands and wives, including claims under both federal RICO and New Jersey's Racketeer Influenced and Corrupt Organizations Act ("New Jersey RICO"). (Third Am. Compl.) More specific to the present action before this Court, the majority members' case in state court seeks "the disassociation of the Kleiman Defendants from New Vista, pursuant to N.J.S.A. 42:2B-24, *nunc pro tunc*, to the date of the filing of the original Verified Complaint or alternatively, to the date the Kleimans were removed from management on November 18, 2005." (*Id.* at 19-20, ¶5(e).)

### B. Present federal action

While the pending state derivative lawsuit was going on, the Kleiman wives commenced the present action on November 7, 2008, on diversity grounds.

The Kleiman wives' original complaint, which did not assert federal question jurisdiction, charged defendants with "malpractice and breach of fiduciary duties in rendering accounting services[,]" while "maintaining a clandestine ownership interest" in New Vista." (Or. Compl. ¶ 1.) Plaintiffs' specific causes of action included: (Count I) injury to property rights and claims against self-dealing, (Count II) fraud, (Count III) malpractice, (Count IV) false billing practices, (Count V) breach of contract, (Count VI) conspiracy, (Count VII) New Jersey Rico, N.J.S.A. 2C-41:1, (Count VIII) conspiracy to violate New Jersey RICO, (Count IX) consumer fraud. (*Id.*)

On December 23, 2008, defendants filed a pre-motion letter with Magistrate Judge Patty Shwartz requesting leave to file a motion to dismiss the original complaint pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that complete diversity of citizenship was lacking because both plaintiffs and defendants were New York Citizens. (D.E. 7.) Magistrate Judge Shwartz set a deadline of January 16, 2009 for plaintiffs to file an amended complaint or alternatively inform all parties that no amendment would be forthcoming. (D.E. 8.) Plaintiffs filed an amended complaint on January 16, 2009.

The amended complaint asserts federal RICO and RICO conspiracy causes of action, thereby alleging federal question as the basis for this Court's jurisdiction pursuant to 28 U.S.C. § 1331. The amended complaint further asserts supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as the basis for this Court deciding the other causes of action in this case, which were the grounds asserted in the original diversity case.

5

Pursuant to 28 U.S. § 1367(c)(3), if the Court rejects the federal claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over related state law claims.

### i.   *Federal RICO*

The Kleiman wives' first claim for relief is a federal civil RICO claim under 18 U.S.C. § 1962(c). (Am. Compl. ¶¶ 57-71.) The gravamen of plaintiffs' federal RICO claim is that "[d]efendants conspired to and did engage in mail and wire fraud in violation of 18 U.S.C. § 1341 or § 1343 by using, or causing to be used, the United States mail or interstate wire communications in furtherance of and for the purposes of executing schemes to defraud and to obtain and maintain money and property by false pretenses." (*Id.* at ¶ 58.) They further allege that defendants used these means of communication "to conduct the accounting services in question, to collect data relating to the services, to agree and commit overt acts in furtherance of their conspiracy, and to transmit fraudulent documents." (*Id.* at ¶ 59.)

The RICO claim alleges that the Weinberger defendants (George Weinberger, Leon Goldenberg, and Hadassah Schwartz) and the accounting defendants (Martin Friedman Associates, P.C., Martin Friedman, Leo Hirsch, and Harold Goldenberg) "constituted an association in fact and therefore an 'enterprise' as that term is defined by 18 U.S.C. § 1961(4) and used in 18 U.S.C. § 1962." (*Id.* at ¶ 61.) According to the Kleiman wives, the enterprise "was created and has existed as an ongoing association engaged in or affecting interstate commerce." (*Id.*) Moreover, they allege that defendants "acted in concert with specific, well-defined goals in the Enterprise, to achieve a common goal of appropriating assets from the Kleimans, from the federal and state government, and from other parties." (*Id.* at ¶ 62.)

Rounding out plaintiffs' RICO claim, they claim that defendants' acts constituted a "pattern of racketeering" sufficient to give rise to a federal RICO cause of action. (*Id.* at ¶ 65.)

    ii.  *Conspiracy to Violate Federal RICO*

The Kleiman wives' amended complaint also alleges that defendants conspired to violate 18 U.S.C. § 1962(c), because they "participated and agreed to participate in the Enterprise." (*Id.* at ¶ 90.)

### III. STANDARD OF REVIEW

Rule 12(b)(6) permits courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, the court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed if the plaintiff's allegations, taken as true, fail to state a claim. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 (3d Cir. 1994).

In ruling on a motion to dismiss, "[t]he inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

In recent years, the Supreme Court and the Third Circuit have narrowed what was once a simple notice pleading to what is now a "heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Twombly*, 550 U.S. 544; *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)).

*Fowler* set out a two-part analysis for district courts to follow:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler*, 578 F.3d at 210-11 (quoting *Iqbal*, 129 S. Ct. at 1950). The reviewing court engages in a "'context-specific task'" when evaluating the plaintiff's factual allegations, "'draw[ing] on its judicial experience and common sense.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 129 S. Ct. at 1949).

**IV.    DISCUSSION**

The federal civil RICO statute states that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To plead a violation of RICO, the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004).

A RICO plaintiff first must establish the existence of an "enterprise," which, under the RICO statute, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Practically speaking, the plaintiff must allege that the enterprise has "(1) a framework or superstructure for making or carrying out decisions, (2) members who function as a unit with established duties, and (3) an existence separate and apart from the alleged pattern of racketeering activity." *Parrino v. Swift*, 2006 WL 1722585, at *2 (D.N.J. 2006) (citing *United States v. Riccobene*, 709 F.2d 214, 221-24 (3d Cir. 1983)).

At the motion to dismiss stage, the plaintiff need not allege each of the aforementioned elements of an enterprise. *Darrick Enterprises v. Mitsubishi Motors Corp.*, 2007 WL 2893366, at *7 (D.N.J. 2007) (citing *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 789-90 (3d Cir. 1984)). However, dismissal will be granted if the allegations set forth in the pleadings negate the existence of an enterprise. *Hollis-Arrington v. PHH Mortg. Corp.*, 2005 WL 3077853, at *8 (D.N.J. 2005) (citing *Seville*, 742 F.2d at 790 n.5)).

A plaintiff in a civil RICO action also must establish a "pattern of racketeering," which requires at least two predicate acts of racketeering. 18 U.S.C § 1962(5). The RICO statute states that such predicate acts may include, *inter alia*, federal mail and wire fraud, pursuant to 18 U.S.C. § 1341 and 18 U.S.C. § 1343. The federal mail and wire fraud statutes proscribe the use of interstate mail and wires for the purpose of "devis[ing] a scheme or artifice to defraud." 18 U.S.C. §§ 1341, 1343.

While the evidence proffered to establish an enterprise and a pattern of racketeering "may in particular cases coalesce, proof of one does not necessarily establish the other." *United States v. Turkette*, 452 U.S. 576, 583 (1981). In other words, "[t]he 'enterprise' is not the 'pattern of

racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Id.*

### A. *Proof of an "Enterprise"*

The Kleiman wives allege that defendants had a clear goal in mind when they conspired together in squeezing out plaintiffs of their ownership interests in New Vista. In their complaint, plaintiffs allege the existence of an enterprise this way:

> 61. At all times relevant hereto, defendants Martin Friedman Associates, Martin Friedman, Leo Hirsch, Harold Goldenberg, George Weinberger, Leonard Goldenberg, and Hadassah Schwartz constituted an association in fact and therefore an "enterprise" as that term is defined in 18 U.S.C. § 1961(4) and used in 18 U.S.C. § 1962 (the "Enterprise"). The Enterprise was created and has existed as an ongoing association engaged in or affecting interstate commerce.
>
> 62. As a whole, defendants acted in concert with specific, well-defined goals in the Enterprise, to achieve a common goal of appropriating assets from the Kleimans, from the federal and state government, and from other parties.
>
> 63. Upon information and belief, the Enterprise had a defined structure, with defendant Weinberger being the primary decisionmaker.

(Am. Compl. ¶¶ 61-62.)

The amended complaint paints the picture of defendants—in an effort to gain sole control over New Vista and rid themselves of the Kleiman spouses altogether—forming an enterprise, and then conspiring first to dethrone the Kleiman husbands from their management positions, and second to strip the Kleiman wives of their ownership interests. Defendants argue, and the Court agrees, that the amended complaint *negates* the existence of an enterprise separate and apart from the alleged pattern of racketeering. The allegation in ¶ 62 is that "defendants acted in concert with specific, well-defined goals in the Enterprise to achieve a common goal of appropriating assets from the Kleimans, from the federal and state government and from other parties." This paragraph specifies that the "well-defined goal" of the Enterprise is defendants'

10

conspiracy to divest plaintiffs of their ownership interests. There is no other identity or characteristic attributed to the Enterprise and as such, it is indistinguishable from what it was formed to do. In short, the complaint has failed to allege one of the critical elements of a RICO case—an Enterprise that has "'an existence separate and apart from the pattern of activity in which it engages.'" *Riccobene*, 709 F.2d at 223 (quoting *Turkette*, 452 U.S. at 583).

### B. Proof of a "Pattern of Racketeering"

To establish a "pattern of racketeering" in a federal RICO case, the plaintiff must allege that two predicate racketeering activities "are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

A "pattern of racketeering" activity requires a showing of "relatedness" and "continuity." *Id.* The Supreme Court considered the legislative history of the RICO statute in formulating its analytical framework, reiterating that "'[i]t is this factor of *continuity plus relationship* which combines to produce a pattern.'" *Id.* (quoting 116 Cong. Rec., at 18940 (1970)). The relatedness and continuity factors are distinct prongs that must individually be satisfied, "though in practice their proof will often overlap." *Id.*; *see also Tabas v. Tabas*, 47 F.3d 1280, 1292 (3d Cir. 1995).

Considering the relatedness prong first, defendants' acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240. "The relatedness test will nearly always be satisfied in cases alleging at least two acts of mail fraud stemming from the same fraudulent transaction –by definition the acts are related to the same "scheme or artifice to defraud." *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1414

(3d Cir. 1991). It is the continuity prong that requires the court to "look beyond the mailings and examine the underlying scheme or artifice." *Id.*

Continuity may be either closed- or open-ended, referring to either a "closed period of repeated conduct, or to past conduct that by its nature projects into the future the threat of repetition." *H.J. Inc., 492 U.S.* at 240. "Open-ended" continuity requires a plaintiff to allege a "threat of continuity"—more specifically, a threat of continuing racketeering activity beyond the period covered in the complaint. *Id.* at 241-43. Such a threat exists when the predicate acts are part of the defendant's "regular way of doing business." *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 609 (3d Cir. 1991) (citing *H.J., Inc.*, 492 U.S. at 242). In this case, defendants argue that plaintiffs do not allege "open-ended" continuity, as they are not claiming that defendants used fraud as a regular way of conducting the business of New Vista. Rather, plaintiffs are alleging what amounts to a single conspiracy—that is, defendants used fraud as a tactic for the sole purpose of divesting plaintiffs of their equity ownership.

The Court agrees that plaintiffs' allegations fall into the category of "closed-ended" continuity, which is "demonstrated by proving a series of related predicates lasting a substantial period of time." *Hughes*, 945 F.2d at 609. They ask this Court to measure continuity by the two allegedly falsified Schedule K-1's filed with the IRS. The Court notes that plaintiffs assert other allegations in their amended complaint, including defendants' alleged schemes to defraud the federal and governments. However, such allegations are not relevant to the gravamen of plaintiffs' case, which is that they were illegally squeezed out. Focusing, then, on the actions taken against plaintiffs, the amended complaint asserts in pertinent part:

> 42. The Schedule K-1 issued to R. C. Kleiman for the calendar year ended 2005 reflected that she had a 20% ending profit and 20% ending loss share and an ending capital account of -$708,736.

> 43. The Schedule K-1 issued to R.C. Kleiman for the calendar year ended 2006 shows no percentage of ownership, and the same ending capital account balance as the previous year.
>
> 44. At no point in 2006 did R.C. Kleiman transfer or otherwise relinquish her ownership interest in New Vista.
>
> 45. The Schedule K-1 issued to R.C. Kleiman for the calendar year ended 2007 shows no percentage of ownership, and the same ending capital balance as in 2005.
>
> 46. All of the defendants were aware of the Kleimans' interest because the older Schedule K-1s reflected ownership by the Kleimans and no supervening act has taken place to result in the Kleimans no longer being owners.
>
> 47. Moreover, in order to reflect the ownership percentage appropriated from the Kleimans, presumably the Schedule K-1 issued to the Weinberger defendants must have reflected an inflated ownership interest and must have assigned the change in capital accounts in subsequent years to the Weinberger defendants.
>
> 48. Presumably, these false Schedule K-1s were sent to the Internal Revenue Service [IRS].

(Am. Compl. ¶¶ 42-48.)

Plaintiffs sum up their allegations of racketeering:

> 65. Defendants' acts encompassed a pattern of racketeering, taking place for over four years, and included multiple acts of mail and wire fraud in violation of 18 U.S.C. § 1962(c).
>
> 66. The defendants' pattern of racketeering activity, including acts of mail fraud and wire fraud, have occurred within the relevant time periods outlined in 18 U.S.C. § 1961(5).

(*Id.* at ¶¶ 65-66.)

While on its face the amended complaint's allegations supporting a RICO cause of action may appear grounded, what is missing are pleaded facts tied to the Kleiman wives' alleged injury. The Kleiman wives charge the defendants with filing false K-1's that essentially made

the Kleiman wives' ownership interest disappear between calendar years 2005 and 2006, with a loss of several hundred thousand dollars from their capital account, presumably shifted over to the Weinberger defendants.

Drawing every reasonable inference in favor of plaintiffs, their allegations amount to "garden variety" business fraud. *Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 37 (3d Cir. 1987). Plaintiffs are suing defendants on the theory that they colluded to divest the Kleiman wives of their ownership interests in New Vista.[2] Their allegations with respect to defendants' scheme to oust their husbands from management are irrelevant to the issue of whether the alleged finagling with K-1's divested the Kleiman wives from their entitlements. Violations as to Medicaid reimbursements are similarly off point. As such, the amended complaint goes no further than alleging that the accounting defendants improperly filed K-1's to the detriment of the plaintiffs, and does not allege the required *pattern of racketeering that directly injured the Kleiman wives*.

Based on the above analysis the Court concludes that the amended complaint is fatally devoid of allegations that suffice to allege an Enterprise and a pattern of racketeering activity consistent with the requirements of RICO. Having failed to adequately plead a substantive federal RICO claim under 18 U.S.C. § 1962(c), plaintiffs' federal RICO claim for conspiracy under 18 U.S.C. § 1962(d) likewise fails. "Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are

---

[2] In the opening paragraph of their opposition brief, plaintiffs espouse the theory that defendants conspired "to deprive the plaintiffs of their ownership interest in New Vista, to oppress them, and to loot the balance sheet." (Pl. Br. 1.)

14

themselves deficient." *Lum v. Bank of Am.*, 361 F.3d 217, 227 n.5 (3d Cir. 2004) (quoting *Lightening Lube, Inc. v. Wito Corp.*, 4 F.3d 1153, 1192 (3d Cir. 1993)).

### C.  *Remaining State Law Claims*

The New Vista litigation, slated to be tried in state court in April 2010, will provide a full and fair opportunity for the Kleiman wives to address their disassociation from New Vista. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over related state law claims where it has dismissed all federal claims over which it has original jurisdiction.  Because this Court has dismissed plaintiffs' only federal claims, the remaining state law claims set forth under Counts II (New Jersey RICO), Count IV (Conspiracy to Violate New Jersey RICO), Count V (Conspiracy), Count VI (Injury to Property Rights and Self Dealing), Count VII (Fraud), Count VIII (Malpractice), Count IX (False Billing Practices), and Count X (Breach of Contract) are dismissed.

## V. CONCLUSION

Based on the foregoing, defendants' motion to dismiss is **granted**, and the complaint dismissed.  An appropriate order will be entered.

/s/Katharine S. Hayden

Hon. Katharine S. Hayden